**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

EATON CORPORATION,

               Plaintiff,

     V.                              Civil Action No.:  03-74844

ZF MERITOR LLC,                  Honorable George Caram Steeh
ARVINMERITOR, INC. AND
ZF FRIEDRICHSHAFEN AG,        Magistrate Judge R. Steven Whalen

               Defendants,

_____/

## DEFENDANTS' EXPEDITED MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES

     Defendants ZF FRIEDRICHSHAFEN AG ("ZF") and ARVINMERITOR, INC. ("AM") (collectively "Defendants"), by and through its counsel of record, hereby move this Court, on an expedited basis, pursuant to Fed.R.Civ.P. 37 to compel Plaintiff EATON CORPORATION ("Eaton") to properly respond to Defendants' outstanding discovery requests, including Defendants' interrogatory nos. 1, 5, 7, 8, 10, 12, 13-15, 17, 19-20 and 22, as well as Defendants' document request nos. 14, 23, 48-49, 51, 56-57, 77-80, 83-86, 88 and 96 by no later than February 17, 2006.  Defendants also move this Court to compel Plaintiff to produce documents that it has been promising to produce since September 28, 2005, also by February 17, 2006. With opening expert reports due on March 3, 2006 and a fact discovery deadline of March 31, 2006, Defendants request that the Court set an expedited briefing schedule and an expedited hearing date to address the above requested discovery necessary to Defendants' case.

     Pursuant to Local Rule 37.1, counsel for Defendants have met and conferred telephonically with  counsel for Plaintiff on December 8, 2005 and January 9, 2005, and have

written counsel for Plaintiff on numerous occasions detailed in the accompanying memorandum to address each of the above discovery requests.  Defendants' efforts have been met by Plaintiff's constant delay and refusals to comply with standard patent infringement litigation discovery requests.

A memorandum in support of Defendants' Expedited Motion to Compel and a Proposed Order follow.

Dated: February 2, 2006                                    Respectfully submitted,

/s   James K. Cleland_____
David D. Murray (P59101)
James K. Cleland (P68507)
Raymond J. Vivacqua (P58731)
BRINKS HOFER GILSON & LIONE
524 S. Main St., Suite 200
Ann Arbor, MI  48108-2744
Telephone: (734) 302-6000
Facsimile: (734) 994-6331

Gary M. Ropski
Laura Beth Miller
Thomas Filarski
BRINKS HOFER GILSON & LIONE
NBC Tower - Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Il  60611-5599
Telephone: (312) 321-4200
Facsimile: (321) 321-4299

*Attorneys for Defendants,*
*ZF Meritor LLC,*
*ArvinMeritor, Inc. and*
*ZF Friedrichshafen AG*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

EATON CORPORATION,

        Plaintiff,

    V.                                    Civil Action No.:  03-74844

ZF MERITOR LLC,                  Honorable George Caram Steeh
ARVINMERITOR, INC. AND
ZF FRIEDRICHSHAFEN AG,        Magistrate Judge R. Steven Whalen


             Defendants,
_____/

### [PROPOSED] ORDER

In consideration of Defendants' Expedited Motion to Compel Plaintiff's Discovery Responses, and all papers related thereto:

IT IS HEREBY ORDERED that said Motion be and hereby is GRANTED.  Plaintiff is ordered to provide the following information by February 17, 2006:

    (1)    Complete responses to Defendants' interrogatory nos. 1, 5, 7, 8, 10, 12, 13-15, 17, 19-20 and 22;

    (2)    Documents in response to Defendants' document requests nos. 14, 23, 48-49, 51, 56-57, 77-80, 83-86, 88 and 96; and

    (3)    Documents responsive to Defendants' remaining document requests as already promised by Plaintiff back on September 28, 2005.


Dated: _____       _____

                                          George C. Steeh
                                        United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of February, 2006, copies of the foregoing DEFENDANTS' EXPEDITED MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES and supporting Memorandum were served upon counsel of record in the manner indicated below:

### <u>BY THE ECF SYSTEM</u>

Alan C. Harnisch
Lawrence S. Gadd
STROBL CUNNINGHAM & SHARP, P.C.
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI  48304-2376

### <u>BY EMAIL AND FIRST CLASS MAIL</u>

Michael H. King
Keith P. Schoeneberger
LeBOEUF, LAMB, GREENE & MacRAE, L.L.P.
Two Prudential Plaza
Suite 1175
180 North Stetson Avenue
Chicago, IL  60601

William H. Mandir
John R. Rabena
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue NW
Washington, D.C. 20037

/s  James K. Cleland

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**


EATON CORPORATION,

               Plaintiff,

     V.                                  Civil Action No.:  03-74844

ZF MERITOR LLC,                   Honorable George Caram Steeh
ARVINMERITOR, INC. AND
ZF FRIEDRICHSHAFEN AG,        Magistrate Judge R. Steven Whalen

               Defendants,

_____/


**MEMORANDUM IN SUPPORT OF DEFENDANTS' EXPEDITED MOTION TO**
**COMPEL PLAINTIFF'S DISCOVERY RESPONSES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

I.  PROCEDURAL HISTORY AND STATEMENT OF ISSUES PRESENTED ..................... 1

II.  DEFENDANTS' EFFORTS TO RESOLVE THE DISCOVERY DISPUTES ................. 2

III.  ARGUMENT .................................................................................................... 5

   A.  Legal Standards for Motion to Compel Discovery and Sanctions...................................... 5

   B.  The Court Should Order Plaintiff To Respond to Defendants' Outstanding Interrogatories 5

      1.  Defendants' Infringement Interrogatories (Int. Nos. 1 and 3) ........................................ 6

      2.  Defendants' Interrogatories Directed to Prior Art and Prior Art Searching (Int. Nos. 7 and 8) ....................................................................................................... 10

      3.  Defendants' Interrogatories Directed to Eaton's Patented AMTs and Competitors in the AMT Market (Int. Nos. 10 and 12)..................................................................... 11

      4.  Defendants' Interrogatory Directed to Marking (Int. No. 15) ..................................... 12

      5.  Defendants' Interrogatory Directed to Plaintiff's Communications with AMT Purchasers Relative to the Patents in Suit (Int. No. 17)......................................... 13

      6.  Interrogatories That Plaintiff has Already Agreed to Supplement (Int. Nos. 5, 13-14, 19-20 and 22) ................................................................................................ 14

   C.  The Court Should Order Plaintiff To Respond to Defendants' Outstanding Document Requests ........................................................................................................ 14

      1.  Document Requests That Plaintiff Has Already Agreed to Comply With or Supplement (Document Requests 14, 23, 48, 51, 56-57, 88, 96) ............................................ 14

      2.  Defendants' Requests Directed to Foreign Patent Prosecution and Cited Prior Art (Request No. 51 and 52) .................................................................................. 15

      3.  Defendants' Requests Directed to Eaton's AMT Patents Addressing the Same Subject Matter as the Patents in Suit (Request No. 49) .................................................... 17

      4.  Defendants' Requests Directed to Eaton's Sales, Financial and Marketing Documents (Request No. 77-80 and 85-86)........................................................................ 17

i

5.    Defendants' Requests Directed to Eaton's Corporate Documents (Request Nos. 83 and 84) ........................................................................................................................................ 18

D.    Sanctions Against Plaintiff Are Appropriate ................................................................... 19

IV.    CONCLUSION............................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Ambu Inc. v. Kohlbrat & Bunz Corp.*,
53 U.S.P.Q.2d 1414 (W.D.N.C. 2000) ....................................................... 18

*Am. Med. Sys., Inc. v. Med. Eng'g.*,
6 F.3d 1523 (Fed.Cir. 1993).................................................................... 13

*B. Braun Med. Inc. v. Abbott Labs.*,
155 F.R.D. 525 (E.D.Pa. 1994)................................................................. 9

*Cable & Computer Tech., Inc.*, v. Lockheed Saunders, Inc.,
175 F.R.D. 646 (C.D.Cal. 1997)................................................................ 9

*Clancy Sys. Intern., Inc. v. Symbol*,
953 F.Supp. 1170 (D.Col. 1997).............................................................. 13

*Conopco, Inc. v. Warner-Lambert Co.*,
2000 WL 342872 (D.N.J. Jan. 26, 2000). ................................................... 8

*Freeland v. Amigo*,
103 F.3d 1271 (6th Cir. 1997) ............................................................. 5, 20

*Georgia-Pacific Corp. v. U.S. Plywood – Champion Papers, Inc.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)......................................................... 18

*Herdlein Tech., Inc. v. Century*,
147 F.R.D. 103 (W.D.N.C. 1993)............................................................. 12

*In re Air Crash Disaster at Detroit Metro. Airport on August 16, 1987*,
130 F.R.D. 641 (E.D.Mich. 1989) ............................................................. 6

*In re One Bancorp Sec. Litig.*,
134 F.R.D. 4 (D.Me. 1991).................................................................... 9

*In re Convergent Tech. Sec. Litig.*,
108 F.R.D. 328 (N.D.Cal. 1985)............................................................. 10

*Mellon v. Cooper-Jarrett, Inc.*,
424 F.2d 499 (6th Cir. 1970) ................................................................. 6

*Nemir v. Mitsubishi Motors Corp.*,
228 F.R.D. 573 (E.D.Mich. 2005) ............................................................ 5

*Nike, Inc. v. Wolverine World Wide,*
43 F.3d 644 (Fed.Cir. 1994)......................................................................... 8

*Pulsecard, Inc. v. Discover Card Serv., Inc.,*
168 F.R.D. 295 (D.Kans. 1996) .................................................................. 12

*Reg'l. Refuse Sys., Inc. v. Inland Reclamation Co.,*
842 F.2d 150 (6th Cir. 1988) ................................................................. 5, 20

*Rite-Hite Corp. v. Kelley Co., Inc.,*
56 F.3d 1538 (Fed.Cir. 1995)..................................................................... 18

*Roesberg v. Johns-Manville Corp.,*
 85 F.R.D. 292 (E.D.Pa. 1980)................................................................... 11

*S.S. White Burs, Inc. v. Neo-Flo, Inc.,*
2003 WL 21250553 (E.D.Pa. May 2, 2003). ........................................... 7, 9

*Super Film of Am., Inc. v. UCB Films, Inc.,*
219 F.R.D. 649 (D.Kan. 2004) .................................................................. 14

*Varga v. Rockwell Intern. Corp.,*
242 F.3d 693 (C.A.6 (Mich.) 2001) .......................................................... 14

*Venture Funding Ltd. v. U.S.,*
1999 WL 500993 (E.D.Mich. May 20, 1999).............................................. 5

*Wagner v. Dryvit Sys., Inc.,*
208 F.R.D. 606 (D.Neb. 2001).............................................................. 11, 19

*Watts v. Fed. Exp. Corp.,*
2001 WL 1661474 (W.D.Mich. April 11, 2001) ...................................... 5, 19

## Rules and Statues

*35 U.S.C. §  287(a)* ............................................................................ 12, 13

*Fed.R.Civ.P. Rule 11*............................................................................. 9, 10

*Fed.R.Civ.P. Rule 26*................................................................. 5, 6, 13, 14, 16

*Fed.R.Civ.P. Rule 33*............................................................................ 5, 10-13

*Fed.R.Civ.P. Rule 34*............................................................................... 5, 14

*Fed.R.Civ.P. Rule 37*.............................................................................................................. 5, 19

## I.      PROCEDURAL HISTORY AND STATEMENT OF ISSUES PRESENTED

Plaintiff filed this case on December 2, 2003, alleging infringement of eleven patents. The case was stayed during the pendency of a proceeding before the International Trade Commission ("ITC") involving the same parties and two of the same patents.  The present case was reopened on May 18, 2005, shortly after which Plaintiff filed an amended complaint (D.I. 19), reducing the number of allegedly infringing patents from eleven to seven, only two of which were involved in the ITC proceeding.  Defendants answered the amended complaint, denying infringement, asserting invalidity of all seven patents and asserting unenforceability of at least two of the asserted patents.  (D.I. 23.)

The Court issued its Scheduling Order For Patent Cases on August 9, 2005.  (D.I. 27.) The Court set a March 3, 2006 deadline for opening expert reports on those issues for which the party bears the burden of proof, a fact discovery deadline of March 31, 2006 and an expert discovery deadline of April 28, 2006. (*Id.*)  The Court also set a claim construction schedule, which includes a claim construction hearing on April 10, 2006.  (*Id.*) Dispositive motions must be filed by May 19, 2006, and a trial date is set for August 29, 2006.  (*Id.*)

Shortly after issuance of the Scheduling Order, Defendants served interrogatories and document requests in late August, 2005.  In response, however, Plaintiff provided very little information, relying heavily on unfounded objections, references to unidentified discovery materials in the ITC proceeding and unfulfilled promises of document production.  Since that time, Defendants have tried in no fewer than twelve letters/emails and two meet and confer conferences to gain cooperation from Plaintiff in discovery.  Plaintiff has consistently ignored Defendants' efforts or met those efforts with delays and resistance.   To date, Plaintiff has produced only a handful of documents, and has failed to fully respond to most interrogatories.

Therefore, Defendants now approach the Court for assistance in obtaining the following information:

    (1)     Complete responses to Defendants' interrogatory nos. 1, 5, 7, 8, 10, 12, 13-15, 17, 19-20 and 22 (some of which Plaintiff agreed to supplement but has not);

    (2)     Documents in response to Defendants' document requests nos. 14, 23, 48-49, 51, 56-57, 77-80, 83-86, 88 and 96; and

    (3)     Documents responsive to Defendants' remaining document requests, which Plaintiff agreed to produce back in September 28, 2005, but has not.

This long overdue discovery is necessary to meet discovery and expert deadlines, particularly on those issues for which Defendants have the obligation to provide an expert report on March 3, 2006.  Given these fast-approaching deadlines, Defendants request that the Court compel Plaintiff to provide the above-described discovery by February 17, 2006.

## II.    DEFENDANTS' EFFORTS TO RESOLVE THE DISCOVERY DISPUTES

Defendants served their First Set of Interrogatories on Plaintiff on August 26, 2005 (Ex. 1), and their First Set of Requests for Production of Documents on Plaintiff on August 29, 2005 (Ex. 2).  Plaintiff's original Responses to Defendants' First Set of Interrogatories contained very little substantive information. (See Ex. 3.) Similarly, Plaintiff's Responses to Defendants' First Requests for the Production of Documents contained mainly stock, non-specific objections and promises to produce non-privileged documents. (See Ex. 4.)

In light of the inadequacy of Plaintiff's discovery responses, Defendants' wrote Plaintiff on November 8, 2005 detailing the specific deficiencies in Plaintiff's responses to interrogatory and document requests, as well as Defendants' bases for demanding supplementation. (Ex. 5, Letter from Cleland to Schoeneberger.)  Defendants agreed to narrow certain requests in an effort to eliminate any potential disputes. In all, Defendants identified deficiencies in 15 of

Plaintiff's interrogatory responses and 23 of Plaintiff's document request responses.  Defendants heard nothing in response from Plaintiff.

Two weeks later on November 21, 2006 Defendants' sent a follow up letter to Plaintiff. (Ex. 6, Letter from Cleland to Schoeneberger.)   In addition, Defendants wrote Plaintiff another letter on the same day directed to the subset of the discovery issues relating to claim construction issues, as those issues impacted Defendants' ability to adequately prepare its claim construction statement.  (Ex. 7, Letter from Cleland to Schoeneberger.)  Again, Plaintiff failed to respond or provide the requested information.  Finally, the parties met and conferred on November 28, 2005, at which time Plaintiff agreed to (i) supplement its responses to interrogatories 1-3, (ii) produce foreign file histories and cited prior art (and a privilege log if Plaintiff removed any portions on account of privilege) and (iii) respond to remainder of the discovery issues raised in Defendants' November 8, 2005 letter.

During the weeks following that meeting, Plaintiff produced some foreign prosecution materials, but omitted key portions and failed to provide any privilege log.  Plaintiff also partially supplemented its responses to infringement interrogatories 1-3, but failed to include any infringement analysis for a number of key claim limitations.  Meanwhile, Plaintiff also continued to ignore the remaining discovery issues raised in Defendants' November 8 letter.  After four additional emails requesting an immediate response or a meet and confer (see Ex. 8, December 7-14, 2005 Email string from Cleland to Schoeneberger), Plaintiff finally responded to Defendants' November 8 letter on December 15, 2005.  (Ex. 9, Letter from Schoeneberger to Cleland.)  While Plaintiff agreed to supplement some of its discovery responses and to produce documents responsive to others, most of the disputes remained.

In yet other attempts to resolve the remaining disputes, Plaintiff rebuffed Defendants:

(1) Regarding the remaining deficiencies raised in Defendants' November 8 letter, Defendants requested a meet and confer on December 22, 2005. It took three additional emails before Plaintiff finally agreed to confer on January 9, 2006. (See Ex. 10, December 22, 2005-January 6, 2006 Email string from Cleland to Schoeneberger.) Plaintiff finally committed to definitive positions on January 13, 2006 (see Ex. 11, Letter from Schoeneberger to Cleland), but with no resolution of the parties' disputes.

(2) Regarding Plaintiff's incomplete response to infringement interrogatories 1 and 3, on January 5, 2006 Defendants pointed out Plaintiff's failure to address key limitations in four (4) of the patents in suit, and Plaintiff's failure to provide proper infringement analysis in a fifth patent. (See Ex. 12, Letter from Cleland to Rabena.) Plaintiff refused to supplement. (See Ex. 13, January 9, 2006 Letter from Rabena to Cleland.)

(3) Regarding Plaintiff's omission of foreign prosecution materials, on January 4, 2006, Defendants' identified specific foreign file histories absent from Plaintiff's December production and noted Plaintiff's failure to provide a privilege log. (See Ex. 14, Letter from Cleland to Rabena.)  After additional correspondence between the parties, Plaintiff denied that any materials were missing from its production and refused to provide a privilege log. (See Ex. 15, Collection of Letters exchanged between Cleland and Rabena dated January 9, January 19 and January 23, 2006.)

(4) On January 18, 2006, Defendants' asked Plaintiff to provide a date by which Plaintiff would supplement its responses to those discovery requests that Plaintiff agreed to supplement – namely interrogatories 5, 13-14, 19-20 and 22 and document requests 14, 48 and 96.  (Ex. 16, Email from Cleland to Schoeneberger.)  As of the date of this motion, Plaintiff has refused to do so.

(5) On January 20, 2006, Defendants asked Plaintiff to provide a date on which Plaintiff would produce all of the documents it had promised to produce back in September of 2005.[1] (Ex. 17, Email from Cleland to Schoeneberger.) Again, as of the date of this motion, Plaintiff has refused to so much as identify a date for production.

Despite Defendants' numerous attempts, requests and accommodations to obtain discovery, Plaintiff continues to stonewall Defendants' efforts.  Plaintiff's goal is clear – to avoid as much discovery as possible in this case and to rely exclusively on expert opinions concerning Defendants' accused products.   That tactic should not be condoned.  Plaintiff already has the key fact discovery it needs from Defendants – Defendants' source code.  Defendants should have equal access to the information necessary to their defenses that lies in the hands of Plaintiff, such

---

[1] Defendants requested that Plaintiff provide a date on which the parties shall exchange document production.

4

as infringement positions, invention documents, potential prior art documents and damages

discovery.  Having exhausted all other options, Defendants now seek the Court's assistance.

## III.   ARGUMENT

### A.   Legal Standards for Motion to Compel Discovery and Sanctions

Rule 37 of the Federal Rules of Civil Procedure governs a party's failure to make a

disclosure or cooperate in discovery.  Under Rule 37, a party may apply for an order compelling

discovery if a party fails to (1) answer an interrogatory submitted under Rule 33, or (2) respond

to document requests under Rule 34.  *Fed.R.Civ.P. 37(a)(2)(B), 37(b)(2)*.  Furthermore, the

Court has endorsed sanctions for a party's failure to cooperate in discovery.  *Watts v. Fed. Exp.*

*Corp.*, 2001 WL 1661474, at *7 (W.D.Mich. April 11, 2001) (attached as Exhibit 18) (*citing*

*Freeland v. Amigo,* 103 F.3d 1271, 1277 (6th Cir. 1997); *Reg'l. Refuse Sys., Inc. v. Inland*

*Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988)).  The Court has the power to impose

sanctions by "refusing to allow the disobedient party to support or oppose designated claims or

defenses, or prohibiting that party from introducing designated matters into evidence."

*Fed.R.Civ.P. 37(b)(2)(B)*; *Nemir v. Mitsubishi Motors Corp.*, 228 F.R.D. 573, 601-02 (E.D.Mich.

2005).  The Court also has the authority to require the party whose conduct necessitated the

motion to pay the moving party the reasonable expenses incurred in making the motion,

including attorney's fees. *Fed.R.Civ.P. 37(a)(4)(A)*; *Venture Funding Ltd. v. U.S.*, 1999 WL

500993, at *4 (E.D.Mich. May 20, 1999) (attached as Exhibit 19).

### B.   The Court Should Order Plaintiff To Respond to Defendants' Outstanding Interrogatories

Under the Federal Rules of Civil Procedure, "[i]nterrogatories may relate to any matters

which can be inquired into under Rule 26(b)(1)…" *Fed.R.Civ.P. Rule 33(c)*.  Rule 26(b)(1)

permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense

of any party…" *Fed.R.Civ.P. Rule 26(b)(1)*.  Furthermore, the Court of Appeals for the Sixth

Circuit has found that: "The scope of examination permitted under Rule 26(b) is broader than

that permitted at trial.  The test is whether the line of interrogation is reasonably calculated to

lead to the discovery of admissible evidence."  *In re Air Crash Disaster at Detroit Metro. Airport*

*on August 16, 1987*, 130 F.R.D. 641, 643 (E.D.Mich. 1989) (*citing Mellon v. Cooper-Jarrett,*

*Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970)).

### 1.  Defendants' Infringement Interrogatories (Int. Nos. 1 and 3)

Defendants' interrogatories 1 and 3 call for Plaintiff's detailed limitation-by-limitation

infringement positions relative to each of the patents in suit, both literal and under the doctrine of

equivalents. (See Ex. 1.)  Plaintiff initially deferred any substantive response (see Ex. 3), but then

partially supplemented its response to interrogatories 1 and 3 on December 19, 2005 after a meet

and confer. (See Ex. 20, Plaintiff's Supplemental Responses to Int. Nos. 1-3.) Plaintiff's

supplemental response, however, omitted critical infringement positions for five of the patents in

suit (U.S. Pat. Nos. 5,275,267; 5,293,316; 5,403,249; 5,439,428 known as the "Slicker patents"

and U.S. Pat. No. 5,664,458, known as the "Stasik patent").

For the Slicker patents, Plaintiff failed to provide a sufficient identification of the

corresponding structure, circuitry or logic in Defendants' accused product that allegedly

corresponds to the following claimed elements:  (1) reference speed generator, (2) compensator

and (3) prefilter limitations in the Slicker patents. For example, in response to interrogatory 1

relative to the Slicker patents, Plaintiff stated that "the FreedomLine includes a reference speed

generator that is connected to the engine speed sensor and generates a reference speed signal."

(See Ex. 20, p. 19.)  This response does not identify the factual basis for Plaintiff's claim that a

reference speed generator is present in the accused product.  A proper response would have

identified the particular component or the particular portion of the software code (by source code file and line number) that allegedly serves as the reference speed generator. Similar inadequacies exist with Plaintiff's infringement assertions relative to the "compensator" and "prefilter" limitations:

- Plaintiff alleges that "the FreedomLine controller includes <u>compensator</u> logic that generates a clutch engagement signal based in part on the algebraic sum signal. The compensator output is provided to the clutch actuator to cause asymptotic engagement with the reference speed signal." This response is insufficient because it fails to identify that portion of the accused product or the source code that allegedly corresponds to the "compensator" limitation of the Slicker patents. (See Ex. 20, p. 21.)

- Plaintiff's allegation that "the FreedomLine controller logic includes a <u>prefilter</u> that is connected to the reference speed generator and generates a filtered reference speed signal" also merely recites the claim language and does not identify what portion of the FreedomLine transmission system allegedly constitutes a "prefilter," what portion "generates a filtered reference speed signal," or even what portion of the accused device is the claimed signal. Again, Plaintiff has Defendants' source code and should be able to identify the responsive portion of the source code with specificity. (See Ex. 20, p. 25.)

Similarly for the Stasik patent, Plaintiff merely parroted the claim language rather than identifying the structure, circuitry or logic in Defendants' accused FreedomLine transmission that allegedly meets the claim limitations. (See Ex. 20, pp. 35-40.)

Courts have consistently required parties to answer interrogatories similar to Defendants' interrogatories 1 and 3 (Ex. 1), which seek the factual basis for Plaintiff's infringement positions. For example, the Court in *S.S. White Burs, Inc. v. Neo-Flo, Inc.* required the plaintiff to answer the following claim construction and infringement interrogatories early in discovery:

Interrogatory No. 3: If Plaintiffs have construed any of the patent claims of U.S. Patent No. 5,257,889 in determining that Defendant has infringed U.S. Patent No. 5,257,889, please state with specificity the meaning given each patent claim construed, identify each person who construed each patent claim, and identify everyone and everything relied upon in construing each patent claim.

Interrogatory No. 7: For each claim of the patent-in-suit, describe with particularity in a chart, on an element-by-element basis, the basis for Plaintiffs' contentions that "Defendant's dental bur" infringes the claims.

2003 WL 21250553, at *2 (E.D.Pa. May 2, 2003) (attached as Exhibit 21).  The Court reasoned

that "because the essence of a patent infringement suit is the comparison between the elements of

two products, this element-by-element disclosure is necessary to inform [the defendant] of the

exact nature of Plaintiffs' claims."  *Id.*  While plaintiff argued that it should not have to answer

the above interrogatories until after claim construction and the close of discovery, the Court

found that parties should exchange information early enough so that the claim construction

hearing would be meaningful.  *Id.* at *3.

Similarly, the Court in *Conopco, Inc. v. Warner-Lambert Co.* required the plaintiff to

answer the following infringement interrogatory during early stages of discovery:

> Interrogatory No. 2:  For each claim of the patents-in-suit alleged to be infringed,
> describe in detail how [Plaintiff] contends that each [Defendant] product and
> method practiced allegedly infringes such claim, including a statement as to
> whether the alleged infringement is literal or under the doctrine of equivalents,
> and, for literal infringement, provide a clear identification and explanation of the
> structure for each [Defendant] product, or step for each method practiced or
> induced, which corresponds to each limitation of each claim alleged to be
> infringed, or, for the doctrine of equivalents, describe the function, way and result
> for each element or step of the claim for which [Plaintiff] contends that
> [Defendant's] product or method practiced contains an equivalent, and identify
> the corresponding function, way and result for that element or step.

2000 WL 342872, at *1 (D.N.J. Jan. 26, 2000) (attached as Exhibit 22).  The Court required

plaintiff to submit a preliminary claim chart showing how it applied the limitations in its patent

claims to the defendant's accused products and to specify whether the alleged infringement was

literal or under the doctrine of equivalents.  *Id.* at *2.  The Court further warned plaintiff that it

may be precluded from asserting its infringement contentions at trial if it failed to comply.  *Id.*

(*citing Nike, Inc. v. Wolverine World Wide*, 43 F.3d 644, 648 (Fed.Cir. 1994)).

Before asserting the claims of the Slicker and Stasik patents at the outset of this litigation,

Plaintiff must have had a good faith basis for contending that each of the claim limitations were

present in Defendants' accused FreedomLine system.  Further, at the initial status conference in

August 2005, Plaintiff requested additional time to file its proposed claim construction statement

for the specific purpose of reviewing Defendants' FreedomLine code.  Yet even now, Plaintiff

has failed to provide even the barest of infringement positions relative to the Slicker and Stasik

patents, <u>even though Plaintiff has had access to Defendants' source code since 2003</u>.  On

November 28, 2005, Plaintiff identified 28 claims in the seven asserted patents that it contends

are infringed.  If Plaintiff has a factual basis for its infringement positions, those positions must

be set forth – or the claims dropped.  There is no excuse for Plaintiff's failure to identify even a

single line of code or a single signal that forms the basis for Plaintiff's infringement positions

relative to the Slicker and Stasik patents.[2]

     Thus, the Court should compel Plaintiff to provide complete responses to Defendants'

interrogatories 1 and 3 with respect to the Slicker and Stasik patents, detailing the factual bases

for Plaintiff's infringement positions, both literal and under the doctrine of equivalents.[3]  If

---

[2] Plaintiff is repeating a practice that it began in the ITC.  In that proceeding, Plaintiff asserted numerous claims of infringement, the vast majority of which were eventually proved to be unsupported by evidence.  Plaintiff would drop the claims only after Defendants expended time and resources filing summary judgment motions.  That practice should not be tolerated here, where discovery closes in two months and where in little over one month, Defendants will be required to present an invalidity expert report on claims that Plaintiff may have no reasonable basis for pursuing.

[3] To the extent that Plaintiff may attempt to defer answering Defendants' interrogatories 1 and 3 on the basis that they are "contention interrogatories", Plaintiff's position is unsupported. First, courts do not consider the interrogatories such as the Defendants' interrogatories 1 and 3 to be contention interrogatories.  *S.S. White Burs*, 2003 WL 21250553, at *1 (*citing B. Braun Med. Inc. v. Abbott Labs.*, 155 F.R.D. 525, 527 (E.D.Pa. 1994) ("interrogatories seeking the identification of elements or limitations alleged to be infringed, and the supporting documents, are not considered contention interrogatories, and will not be postponed."))

     Second, even if deemed contention interrogatories, courts have held that contention interrogatories should be considered in the same manner as any interrogatory, thereby placing the burden on the party opposing discovery rather than shifting the burden to the proponent of the contention interrogatories.  *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D.Cal. 1997).  Under the requirements of Rule 11 of the Federal Rules of Civil Procedure, the plaintiff should be able to answer factual contention interrogatories supporting the allegations in their complaint.  *Id.* (*citing Fed.R.Civ.P. Rule 11* and *In re One Bancorp Sec. Litig.*, 134 F.R.D. 4, 8 (D.Me.1991)).

     Third, even for those courts that may defer propounding and answering contention interrogatories until near the end of the discovery period, contention interrogatories will not be deferred if the party serving the interrogatories proves that early answers "will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis

Plaintiff fails to provide these facts, Plaintiff should be precluded from introducing any evidence of literal or equivalent infringement of those elements for which Plaintiff has refused to identify a corresponding portion of Defendants' accused products.

### 2. Defendants' Interrogatories Directed to Prior Art and Prior Art Searching (Int. Nos. 7 and 8)

Interrogatory 7 requests all patents owned by or assigned to Plaintiff related to the subject matter disclosed or claimed in the patents-in-suit. (See Ex. 1.) Plaintiff agreed to provide only (i) the patents cited on the face of the patents in suit and (ii) foreign counterpart applications and/or patents corresponding to the patents in suit pursuant to Fed.R.Civ.P. 33(d). (See Ex. 3.) In response, Defendants agreed to limit "the subject matter of the patents in suit" to: (1) automatic (i.e., non-manual) control system responses to antilock signals or wheel lock up conditions and (2) control logic and systems for clutch engagement for automatically controlled (i.e., non-manual) transmissions. Even with that limitation, Plaintiff has refused to supplement its response.

Clearly, the information requested in interrogatory 7 is reasonably calculated to lead to the discovery of admissible evidence. For example, the requested patents may reveal: (i) prior art that relates to the validity and/or claim scope of the patents in suit, (ii) the meaning of particular terms of the patents in suit to one of ordinary skill in the art or (iii) the identification of non-infringing alternatives. While Eaton has objected on the basis of breadth and burden, Eaton is undeniably in a better position to identify its own patents than are Defendants.[4] Further, and contrary to Eaton's assertions, "[i]t is not sufficient to simply state that the discovery … will

---

for a motion under Rule 11 or Rule 56." *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 338-39 (N.D.Cal. 1985). Defendants' interrogatories 1 and 3 calling for Plaintiff's infringement positions further each of these goals.

[4] Plaintiff now claims that there is an equal burden on Plaintiff and Defendants to locate the information requested by interrogatory 7 through electronic database searching. This is simply not true. Plaintiff possesses a greater knowledge of its own patent portfolio than Defendants. Moreover, any non-public abandoned applications responsive to interrogatory 7 would only be in the possession of Plaintiff, and not in the public domain.

require the objecting party to expend considerable time and effort analyzing 'huge volumes of documents and information'…" *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D.Neb. 2001) (*citing Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D.Pa. 1980)).

Interrogatory 8 requests an identification of all prior art searches undertaken by or on behalf of Eaton relative to automated mechanical transmissions.  (See Ex. 1.)  In response, Plaintiff refused to provide a response on the grounds that the request is "overly broad, vague and ambiguous."  (See Ex. 3.) To eliminate any alleged objection on the basis of breadth, Defendants agreed to limit interrogatory 8 to "all prior art searches undertaken by or on behalf of Eaton relative to (1) automatic (i.e., non-manual) control system responses to antilock signals or wheel lock up conditions and (2) control logic and systems for clutch engagement for automatically controlled (i.e., non-manual) transmissions.  As for Plaintiff's vague and ambiguous objections, Eaton failed to identify the portion of interrogatory 8 that allegedly is vague or ambiguous.  Nevertheless, Defendants further clarified the request. (See Ex. 5, p. 4).

As interrogatories 7 and 8 are narrowly tailored to seek identification of prior art searches relative to subject matter of the patents in suit, the Court should immediately compel Plaintiff's responses to interrogatories 7 and 8.

### 3.    Defendants' Interrogatories Directed to Plaintiff's Patented AMTs and Competitors in the AMT Market (Int. Nos. 10 and 12)

Interrogatories 10 and 12 address Plaintiff's patented AMT's and competitors in the AMT market. (See Ex. 1).  Plaintiff, however, failed to provide a substantive response to interrogatories 10 and 12, but instead referred Defendants to information already produced in the ITC proceeding – without identifying that information.   Rule 33(d) is clear that Plaintiff "may not simply refer generically to past or future production of documents…. [t]hey must identify in their answers to the interrogatories specifically which documents contain the answer…. [or]

completely answer the interrogatories without referring to the documents." *Pulsecard, Inc. v. Discover Card Serv., Inc.*, 168 F.R.D. 295, 305 (D.Kans. 1996); *see also Herdlein Tech., Inc. v. Century*, 147 F.R.D. 103, 105 (W.D.N.C. 1993) (court ordered plaintiff to answer interrogatory and respond to document requests or to specify the actual business records upon which the defendant should rely for an answer where plaintiff merely stated that responsive information was available from documents that it had already produced.)

Accordingly, Defendants request that the Court order Plaintiff to supplement its responses to interrogatories 10 and 12 in compliance with Rule 33, either by identifying specific documents in accordance with Rule 33(d), or by providing complete substantive responses without referring to the documents.

### 4.    Defendants' Interrogatory Directed to Marking (Int. No. 15)

Interrogatory 15 asks Eaton to "identify each product allegedly covered by the Patents In Suit and each product made by a process allegedly covered by the Patents In Suit that Eaton has marked in accordance with 35 U.S.C. §287, and the date Eaton first marked each such product." (See Ex. 1.)  Eaton responded that (1) "Eaton identifies Defendants' Freedomline product as covered by the Patents In Suit" and (2) "Eaton presently does not mark any of its products with any of the Patents In Suit." Plaintiff's response is not complete.  Plaintiff has failed to identify its own products alleged covered by any of the patents in suit, and failed to indicate whether any of its products have ever been marked with any of the Patents In Suit.

This information is relevant to damages as "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for the infringement occurring after such notice." *Am. Med.*

12

*Sys., Inc. v. Med. Eng'g*, 6 F.3d 1523, 1534 (Fed.Cir. 1993) (*citing 35 U.S.C. § 287(a)*).  Further, a plaintiff's failure to respond to a defendant's interrogatories regarding the plaintiff's marking practices may bar the plaintiff from recovering damages under the constructive notice provisions of section 287(a).  *Clancy Sys. Intern., Inc. v. Symbol*, 953 F.Supp. 1170, 1175 (D.Col. 1997) (summary judgment granted and the case dismissed after the plaintiff was barred from asserting damages for failing to adequately respond to the defendant's marking interrogatories.)

Accordingly, Defendants request an order compelling Plaintiff to provide a complete response to interrogatory 15.

### 5.    Defendants' Interrogatory Directed to Plaintiff's Communications with AMT Purchasers Relative to the Patents in Suit (Int. No. 17)

Interrogatory 17 calls for Eaton to identify all discussions and communications between Plaintiff and any purchasers or potential purchasers of AMTs relative to the patents-in-suit.  (See Ex. 1.)  Plaintiff agreed to produce and identify pre-lawsuit communications pursuant to Rule 33(d), but refused to supply post-suit communications on the bases of relevancy and burden. (See Ex. 9, p. 3.)  Plaintiff's objections are unfounded.  Interrogatory 17 is carefully limited in that: (1) the requested discussions <u>must</u> be with purchasers or potential purchasers of AMTs; and (2) those discussions <u>must</u> relate to the patents in suit.  The only burden is one that requires Plaintiff to search its post-lawsuit records, a task necessary under the Federal Rules of Civil Procedure.  *See e.g. Fed.R.Civ.P. Rule 26(e)*.   The fact that many such communications may have taken place does not absolve Plaintiff of its duty to search post-filing records.

Furthermore, the information called for in interrogatory 17 is relevant.  Responsive communications are relevant to the claims and defenses in this case, including (i) whether and how Eaton's and/or Defendants' products practice the claimed inventions, (ii) the alleged scope of the patents in suit and (iii) non-infringing alternatives.  The fact that the requested

communications may have occurred after the filing of the lawsuit does not render those communications irrelevant.  Interrogatory 17 is calculated to lead to the discovery of admissible evidence, and Defendants request that the Court compel Plaintiff to produce the pre- and post-suit information in response.

> **6.      Interrogatories That Plaintiff has Already Agreed to Supplement (Int. Nos. 5, 13-14, 19-20 and 22)**

Plaintiff has agreed to supplement its responses to each of interrogatories 5, 13-14, 19-20 and 22 (see Ex. 9 and 11), but has failed to do so.  The Court should order Plaintiff to immediately supplement its responses to these interrogatories.

> **C.      The Court Should Order Plaintiff To Respond to Defendants' Outstanding Document Requests**

The Federal Rules of Civil Procedure allow litigating parties to use document requests to obtain "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... The rules are broad, and litigants are required to comply with all properly propounded document requests."  *Varga v. Rockwell Intern. Corp*., 242 F.3d 693, 697 (C.A.6 (Mich.) 2001) (*citing Fed.R.Civ.P. Rules 26(b)(1) & 34*).   Furthermore, Courts have construed a party's duty to search for documents liberally, extending a party's "possession, custody or control" well beyond the party itself.  *Super Film of Am., Inc. v. UCB Films, Inc*., 219 F.R.D. 649, 657 (D.Kan. 2004) (under Rule 34, plaintiff was found to have "control" over and was required to produce documents allegedly in the possession of another company that merely had a commonality of interest with the plaintiff.)

> **1.      Document Requests That Plaintiff Has Already Agreed to Comply With or Supplement (Document Requests 14, 23, 48, 51, 56-57, 88, 96)**

Plaintiff initially agreed to provide documents in response to almost eighty (80) document requests on September 28, 2005.  (See Ex. 4.)  Plaintiff also agreed to produce

documents responsive to Defendant's document requests 23, 51, 56-57 and 88 on December 15, 2005.  (See Ex. 9.)  Plaintiff further agreed to provide responses to document requests 14, 48 and 96 later on January 13, 2006. (See Ex. 11.)  Other than a handful of foreign prosecution history documents, however, Plaintiff has failed to provide any responsive documents since filing its amended complaint. The Court should order these documents produced at once.

### 2.   Defendants' Requests Directed to Foreign Patent Prosecution and Cited Prior Art (Request No. 51 and 52)

The portions of Defendants' document requests 51 and 52 at issue call for all documents relating to the preparation or prosecution of all foreign patents and/or patent applications corresponding to the patents in suit.  (See Ex. 2.)  Plaintiff has produced some foreign prosecution materials, but that production has been insufficient.  Plaintiff has failed to produce critical foreign prosecution documents that Defendants know to exist.  In addition, Plaintiff has failed to provide a privilege log listing documents withheld from Defendants' production.  In particular,

(1)   Plaintiff has failed to produce certain foreign prosecution history materials for the '350 patent, including most notably recent prosecution documents and cited art for the Japanese counterpart to the '350 patent; and

(2)   Plaintiff has removed portions of the foreign prosecution history files that have been produced, without providing a privilege log.

While Plaintiff claims that it has already produced all of the '350 foreign prosecution history documents in the ITC proceeding in 2004 (See Ex. 15, January 23, 2006 Letter from Rabena to Cleland), Eaton is mistaken.  In the ITC production, Eaton produced only the original application for the Japanese counterpart to the '350 patent.  Since that time, there has been significant activity at the Japanese Patent Office ("JPO") concerning prosecution of the '350 patent, including but not limited to (i) a first JPO rejection dated May 28, 2004, (ii) an Eaton

response dated November 18, 2004 and (iii) a second JPO rejection dated December 7, 2004, and (iv) a final JPO rejection dated May 9, 2005.  There likely is other non-public information related to the '350 Japanese counterpart application in Eaton's files as well, such as communications to or from Plaintiff's U.S. attorneys to Plaintiff's Japanese attorneys.  Eaton has neither produced nor logged any of this highly relevant material.[5]

Likewise, although Plaintiff indicated that all privileged documents relating to the foreign prosecution of the patents in suit have already been listed in a privilege log (see Ex. 15), Plaintiff again is mistaken.  First, the ITC proceeding involved only two of the seven patents involved in this litigation, so Plaintiff's ITC privilege log does not cover all seven asserted patents and their prosecution histories.   Moreover, the ITC privilege log has not been updated for some time and additional activities have likely occurred in those foreign prosecutions.  In addition, Plaintiff's recent production of foreign prosecution history documents was completely devoid of any and all correspondence between Plaintiff and/or Plaintiff's U.S. attorneys on one hand and Plaintiff's foreign associates on the other.  Plaintiff cannot dispute that its foreign counterpart application files contain these types of documents. Either Plaintiff did not perform a proper search for documents, or Plaintiff is improperly withholding documents responsive to requests 51 and 52.

Defendants now request that the Court put an end to Plaintiff's game of hide the ball, and order Plaintiff to either produce the missing foreign file prosecution documents or produce a privilege log listing the documents withheld.

---

[5] It appears that Eaton simply wishes to ignore its obligations to search for any additional documents responsive to Defendants' requests, other than those produced in the ITC proceeding. This approach is problematic in two respects: (1) it directly defies Plaintiff's obligation to supplement production during the course of litigation pursuant to the *Fed.R.Civ.P. Rule 26(e)* and (2) it ignores the fact that the ITC proceeding only involved two of the seven patents in suit, one of which was removed from the proceeding.

### 3.     Defendants' Requests Directed to Eaton's AMT Patents Addressing the Same Subject Matter as the Patents in Suit (Request No. 49)

Defendants' document request 49 calls for all documents referring to any of Plaintiff's patents or patent applications that relate to AMT's in general, including Plaintiff's Lightning Top2, Autoshift and/or Ultrashift AMT products.  (See Ex. 2.)  Like interrogatory 7, Defendants agreed to limit request 49 to Eaton's patent or patent applications specifically directed to the subject matter of the patents in suit. (See Ex. 11.)  Because the parties' positions on request 49 are virtually identical to those stated above in reference to interrogatory 7, Defendants' refer the Court to the above analysis of interrogatory 7 and request that the Court order Plaintiff to provide all documents in Plaintiff's possession, custody and/or control responsive to request 49.

### 4.     Defendants' Requests Directed to Eaton's Sales, Financial and Marketing Documents (Request No. 77-80 and 85-86)

Document requests 77-80 and 85-86 relate generally to Eaton's sales, financial and marketing documents:

- Request 77 calls for documents referring or relating to markets for AMTs, including Eaton's anticipated and actual market shares in those markets.

- Requests 78-80 ask for documents referring or relating to the sales, costs and profits of Eaton products that are allegedly covered by the patents in suit.

- Requests 85 and 86 call for various pricing, marketing, forecasting, budgeting and strategic planning documents relating to (i) the market for AMTs and (ii) Eaton's manufacturing and sales of AMTs, including Eaton's AMTs which are allegedly covered by the patents in suit.

(See Ex. 2.)  In response, Plaintiff objected to each request on the basis of relevancy, and refused to produce any responsive documents.  (See Ex. 4.)

Plaintiff's objections are improper and unfounded.  The requested information is directly relevant to damages and invalidity issues, such as (1) a reasonable royalty as a measure of

damages, (2) lost profits as a measure of damages,[6] and (3) commercial success as a counter to Defendants' allegations of obviousness.  While Plaintiff contends that the requested information is not relevant to a reasonable royalty analysis, financial and marketing documents such as those requested by Defendants may be relevant to the calculation of a reasonable royalty.  *Ambu Inc. v. Kohlbrat & Bunz Corp.*, 53 U.S.P.Q.2d 1414, 1419 (W.D.N.C. 2000).  In *Ambu*, the plaintiff withdrew its claim for lost profits, but the Court still ordered plaintiff to produce information on sales, costs and profits associated with plaintiff's patented product because this information was relevant to the computation of a reasonable royalty.  *Id.*  The Court specifically cited the *Georgia-Pacific* factor addressing the "portion or the profit or the selling price that may be customary in the particular business, or in comparable business."  *Id.*; *see also Georgia-Pacific Corp. v. U.S. Plywood – Champion Papers, Inc.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing other factors relevant to reasonable royalty including "the established profitability of the product made under the patent, its commercial success and its current popularity") and *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554-55 (Fed.Cir. 1995) (Federal Circuit permitted the consideration of a plaintiff's profits and commercial policies when calculating reasonable royalties.)

Accordingly, Defendants request that Plaintiff be ordered to either (i) provide documents responsive to requests 77-80 and 85-86, or (ii) waive any right to present any argument at trial on the issues of lost profits, reasonable royalty, non-infringing alternative or commercial success.

**5.**      **Defendants' Requests Directed to Eaton's Corporate Documents (Request Nos. 83 and 84)**

---

[6] Plaintiff has suggested that it is not pursuing lost profits, but Plaintiff has not yet stated that it is waiving lost profits as a measure of damages. Until Plaintiff does so, Defendants are entitled to discovery the information in Plaintiff's possession, custody or control relevant to lost profits.

Document requests 83 and 84 generally call for corporate records referring or relating to (i) Plaintiff's and Defendants' AMTs at issue in the present lawsuit, (ii) the patents in suit, (iii) the present lawsuit or (iv) legal proceedings between Plaintiff and Defendants.  More particularly, the specifically requested documents include minutes or notes from board of director meetings, executive meetings, sales meetings, etc., as well as reports such as Plaintiff's annual reports to shareholders, 10-K reports, sales reports and marketing reports.  (See Ex. 2.) Plaintiff initially refused to provide any responsive documents, claiming that requests 83 and 84 are irrelevant.  (See Ex. 4.)  Plaintiff then asserted that requests 83 and 84 are overly burdensome because they require searching for documents post-dating the filing of the lawsuit. (See Ex. 9, p. 5).  As stated above, this argument does not pass muster; the need to spend considerable time and effort does not absolve Plaintiff of the obligation to search for and provide responsive documents. *Wagner v. Dryvit Sys., Inc.,* 208 F.R.D. at 610.

Accordingly, the Court should compel Plaintiff to produce documents in response to document requests 83 and 84.

### D.    Sanctions Against Plaintiff Are Appropriate

Defendants have made every effort to work with Plaintiff to obtain the above requested discovery.  Defendants have given Plaintiff every opportunity to provide that information, even well beyond the deadlines set by the Federal Rules.  In return, however, Plaintiff has refused to work with Defendants, forcing Defendants to spend needless hours attempting to force Plaintiff to move discovery forward.  Plaintiff's wasteful, uncooperative tactics should not be tolerated.

Rule 37 provides the Court with power to impose sanctions by requiring the party whose conduct necessitated a motion to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees. *Fed.R.Civ.P. Rule 37(a)(4)*; *Watts v. Fed Exp.*

*Corp.*, 2001 WL 1661474, at *7 (*citing Freeland v. Amigo,* 103 F.3d at 1277); *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d at 154 (court imposed monetary sanction for defendant's failure to provide adequate responses to plaintiff's discovery requests.)  The Court should exercise its power to sanction Plaintiff for its inexcusable and unacceptable behavior, and award Defendants their reasonable attorney's fees in bringing the present motion.

## IV.    CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion to compel Plaintiff's discovery responses and document production.


Dated: February 2, 2006                              Respectfully submitted,

                                                     /s  James K. Cleland_____
                                                     David D. Murray (P59101)
                                                     James K. Cleland (P68507)
                                                     Raymond J. Vivacqua (P58731)
                                                     BRINKS HOFER GILSON & LIONE
                                                     524 S. Main St., Suite 200
                                                     Ann Arbor, MI  48108-2744
                                                     Telephone: (734) 302-6000
                                                     Facsimile: (734) 994-6331

                                                     Gary M. Ropski
                                                     Laura Beth Miller
                                                     Thomas Filarski
                                                     BRINKS HOFER GILSON & LIONE
                                                     NBC Tower - Suite 3600
                                                     455 N. Cityfront Plaza Drive
                                                     Chicago, Il  60611-5599
                                                     Telephone: (312) 321-4200
                                                     Facsimile: (321) 321-4299

                                                     *Attorneys for Defendants,*
                                                     *ZF Meritor LLC,*
                                                     *ArvinMeritor, Inc. and*
                                                     *ZF Friedrichshafen AG*