UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EATON CORPORATION,

       Plaintiff,

Case No. 03-74844

vs.

HON. GEORGE CARAM STEEH

ZF MERITOR LLC, ARVINMERITOR,
INC. and ZF FRIEDRICHSHAFEN AG,

       Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT PRECLUDING EATON'S CLAIM FOR LOST PROFIT DAMAGES

The patents-in-suit relate to software improvements in automated mechanical transmission ("AMT") systems used in medium-duty and heavy-duty trucks. A transmission is a complex device that involves gears, housings, clutches, and a shift lever. An automated transmission includes an electronic control unit ("ECU") that is programmed with software which collects information on vehicle and driving conditions, makes calculations, and transmits commands to actuators to put the transmission in a proper gear.

The parties in this case manufacture and sell heavy-duty transmissions - both manual and automated. They ship a significant number of their transmissions to manufacturers of heavy-duty trucks, known as original equipment manufacturers ("OEMs"). Eaton contends that heavy-duty transmission manufacturers attempt to increase the sales of their transmissions by marketing certain patented features to the ultimate truck purchasers. The evidence in this case goes to demand by the ultimate

truck purchasers.

There are three patents-in-suit, which were the subject of a Markman hearing conducted by Special Master James Davis.  The Special Master concluded that the '279 patent relates to a method and apparatus for dealing with a problem called "wheel lock-up condition" in a moving truck.  The patented solution to this problem is to prohibit the transmission from changing gears during wheel lock-up.  When the driver applies the brake on a wet or icy road, a wheel may lock up, causing the truck to skid.  The '279 patent prevents the transmission from automatically shifting to a lower gear based on the fact that a wheel is not moving, because the truck may be traveling at a speed greater than that permitted by the lower gear.  This invention prevents the truck from being forced to slow down too quickly due to an inappropriate gear shift.

The Special Master concluded that the '350 patent relates to a method and apparatus for reengaging a clutch in a truck transmission system after the clutch has been disengaged.  The invention shortens the distance the clutch has to move between events of engagement and disengagement, resulting in smoother shifting.

Regarding the '458 patent, the Special Master concluded that it claims a method and apparatus for semi-automatic control of an automated transmission system in a truck by which the driver can shift directly into an appropriate gear when making a so-called "rolling start."  The '458 invention takes the uncertainty out of rolling starts by automatically selecting an appropriate start gear when the driver upshifts while the truck is moving but is in neutral gear.

Eaton's heavy-duty transmissions are sold under the trade names "AutoShift", "UltraShift", and "Lightning Top2."  Eaton's Lightning Top2 transmission embodies

certain claims of the '279 patent. Eaton's other heavy-duty transmissions do not embody any of the patents-in-suit, though they do embody a number of other patents held by Eaton.[1] Defendants created their FreedomLine transmission and began selling it in the U.S. in 2001. Eaton alleges that defendants deliberately studied Eaton's automatic transmissions and took their intellectual property to use in creating the FreedomLine transmission. The ITC found that the original FreedomLine transmission infringed claim 15 of the '279 patent. After that ruling, defendants re-designed their transmission, but Eaton contends the modified FreedomLine transmission still uses the '279 technology. In fact, Eaton alleges that the FreedomLine transmission infringes all of the patents-in-suit.

Eaton is seeking lost profits on the sale of three categories of its heavy-duty transmissions: (1) manual transmissions that do not practice the patents-in-suit; (2) AMTs that do not practice the patents-in-suit (AutoShift and UltraShift); and (3) the Lightning Top2 transmission, which practices the '279 patent.

In this motion for partial summary judgment to preclude Eaton's claim for lost profit damages, defendants argue that there is no evidence of demand for the patented features. Eaton's expert, John Jarosz, opined that demand by the purchaser of the truck for defendants' allegedly infringing FreedomLine transmission systems is supported by three purchase criteria - safety, smooth shifting and ease of operation.

---

[1] A patent holder is not required to make the patented invention in order to recover damages, including lost profits. King Instr. Corp. v. Perego, 65 F.3d 941, 947-51 (Fed. Cir. 1995).

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

I. Controlling Law

To recover lost profits for patent infringement, the patentee must show a reasonable probability that, "but for" the infringement, it would have made the sales that were made by the infringer. Izumi Prods. Co. v. Koninklijke Phillips Elecs., 315 F.Supp.2d 589, 613 (D.Del. 2004) (citing Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995)). The Federal Circuit has adopted a four-factor test to establish entitlement to lost profits damages. Under what is known as the Panduit test, the patentee must prove: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made. Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978).

The Federal Circuit addressed the requirement of showing demand for the patented technology in Micro Chemical, Inc. v. Lextron, Inc., 318 F.3d 1119 (Fed. Cir.

2003). The patent involved in that case claimed an animal feedlot machine that measured microingredients by weight before mixing them into a liquid carrier to be sprayed over livestock and poultry feed rations. This technology improved on the prior volume machine technology. The trial court found infringement, but on summary judgment held that plaintiff was not entitled to lost profits, in part because it found there to be no evidence of demand for the patented weigh machines. On appeal, the Federal Circuit cited to record evidence indicating that the number of weigh machines in commercial use increased during the infringement period, both parties made profits on placement of their weigh machines, and defendant advertised its weigh machines as providing "accurate mixing and delivery" benefits. The Court concluded there was a genuine issue of material fact concerning demand.

In <u>Izumi Products</u>, the patent covered an electric razor that included an inner cutter located under an outer cutter. Claims 1 and 2 recited an electric razor, which the court noted was a complete apparatus, and claim 3 recited only the inner cutter. The court denied Izumi's lost profit claim for any infringement of claim 3 because the court found "no evidence that Izumi marketed, advertised, or promoted the inner cutter component to consumers in the United States." <u>Izumi Prods.</u>, 315 F.Supp.2d at 615. In contrast, the evidence showed that Izumi did market a variety of other features. The court therefore permitted Izumi to pursue its claim for lost profits damages as to claims 1 and 2.

In <u>Advanced Medical Optics, Inc. v. Alcon, Inc.</u>, the patent covered an occlusion mode feature of a machine used to regulate fluid flow in and out of the eye during cataract surgery. In order to support its claim for lost profit damages, plaintiff presented

defendant's marketing material, which contained a headline directed to the patented feature, followed by a list of associated benefits of the occlusion mode feature.  In addition, the defendant produced a PowerPoint presentation, with eight pages dedicated to the discussion of the occlusion mode and its associated benefits.  Advanced Medical Optics, Inc., 361 F.Supp.2d 404, 419 (D.Del. 2005).  The court found there to be enough evidence to create a genuine issue of material fact with respect to whether there was demand for the occlusion mode feature.  Id.

The entire market value rule arises to "allow [] for recovery of damages based on the value of an entire apparatus containing several features, even though only one feature is patented."  Fonar Corp. v. Gen. Elec., 107 F.3d 1543, 1552 (Fed. Cir. 1997).  A recovery on the value of the entire apparatus will be permitted only in situations where the patented feature is the basis for customer demand.  Id., Rite-Hite Corp., 56 F.3d at 1549, Izumi Products, 315 F.Supp.2d at 614.  If not for this restriction, an infringer could be required to pay multiple recoveries on a single product to numerous patentees.

II.  Demand for Patented Feature

Eaton argues that the features of the patents-in-suit all relate to safety, performance, reliability, and ease of use, and help reduce operating costs such as driver training and maintenance.  According to Eaton's economic expert, John Jarosz, these are among the factors that impact a purchase decision.

Proof of demand can be established with: (a) evidence showing sales of products that practice the patented invention; (b) evidence of a defendant's decision to continue risking infringement liability; and (c) marketing material that promotes the patented

features.  Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 552 (Fed. Cir. 1984); Advanced Medical Optics, Inc. v. Alcon Inc., 361 F.Supp.2d 404, 419 (D.Del. 2005).

    A.  <u>'279 Patent</u>

As it relates to the '279 patent, plaintiff alleges that defendant's FreedomLine transmission infringes a feature of plaintiff's Lightning Top2 transmission.  The '279 patent relates to a method and apparatus for dealing with wheel lock-up in a moving truck.  This condition presents a safety issue because wheel lock-up could cause a driver to lose control of the truck.  The invention claimed in the '279 patent also prevents damage to the engine which could otherwise occur when the transmission is in too low a gear for the speed of the vehicle.

As evidence of demand, plaintiff points to the testimony of Eaton's Manager of Global Communications, Don Alles, who testified that one of the questions immediately raised by customers was whether the transmission would shift inappropriately in a skid condition.  When questioned about this statement at his deposition, Mr. Alles answered that he knew this "through monthly reporting, feedback from customers that I read in our own monthly reports where that particular feature was communicated to the customer to put their mind at ease about a transmission overshifting or shifting inappropriately in a skid condition."  (Alles deposition, p. 44:1-6).  The monthly reports referenced by Mr. Alles were not provided to defendants during discovery, nor has there been any attempt by plaintiff to provide them in connection with this motion.  Mr. Alles' testimony is unsupported, and is not the best evidence of customer demand when he relies upon written reports which are not part of the record in this case.

8

When Eaton launched the Lightning Top2 transmission, it issued a press release stating in part:

> The computer is constantly monitoring factors such as engine speed, throttle input, and road speed, and how quickly the truck is slowing down. It then automatically adjusts the shift logic to adapt to the conditions.

(Plaintiff's Exhibit 28-A). This statement is not specific to the wheel lock-up condition addressed by the '279 patent. Rather, the statement generically applies to all instances of computer-monitored conditions. The two quoted sentences contained in the six page press release do not provide evidence of demand for the patented feature at issue.

Finally, Eaton claims that it sold 11,775 Lightning Top2 transmissions since it was introduced, which it alleges is evidence of demand for the '279 patent. In addition, defendants sold 10,591 FreedomLine transmissions during the damages period, which allegedly constitutes evidence of demand for all of the patents-in-suit. However, there is no direct evidence that these sales are attributed to demand for the '279 patent[2] as opposed to any other feature of the particular transmissions.

The court finds that plaintiff has failed to establish a genuine issue of material fact that customers demanded the improved features of the '279 patent in making their decision to purchase the FreedomLine or Lightning Top2 transmissions.

B. '350 Patent

Eaton's '350 patent shortens the distance the clutch has to move between events of engagement and disengagement. The performance of the transmission is enhanced because the clutch is more responsive and achieves a smoother engagement.

---

[2] There is also no direct evidence that sales of the FreedomLine transmissions were due to demand for the '350 or '458 patented features.

The marketing material connected to the improvement of the '350 patent is very general, and not specifically tied to the shortening of the approach point.  For example, one of defendants' materials states that the FreedomLine transmission "respond[s] faster", but does not give a context for that statement, or an object of comparison.

There is no clear record evidence of demand for the improvement that is the subject of the '350 patent.

### C. '458 Patent

Eaton's '458 patent is known as the rolling start, which is an improvement over the prior technology, which required the vehicle to be brought to a stop before a driver could select a gear.  The invention of the '458 patent allows the automated mechanical transmission to calculate an appropriate gear for the truck's ground speed, upon the driver making a single movement of a lever when the vehicle is rolling and the transmission is in neutral.

The marketing materials on record include customer testimonials published by defendants.  The two-page document has one statement that directly addresses the '458 patent.  Driver Wayne Corey states that he is impressed with the FreedomLine transmission's performance:

> Going down mountains scared me at first, he says.  One time I accidentally took it out of gear on the way down a grade, Corey says.  I put it back into gear and it found the right gear again immediately.  That's what convinced me that it was reliable, he added.  When I go down hills now, I don't even have to look at the tachometer.

The major focus of the document produced by defendants talks about the ease of driving with the automated FreedomLine transmission in stop-and-go traffic, or up and down hills, which does not go to the invention of the '458 patent.

While the one paragraph quoted above does speak directly to the '458 patent, it is hardly enough evidence of demand to create an issue of fact that "but for" the infringement of the rolling start improvement, defendants would not have made the sales that they made.

III. Other Factors

With insufficient evidence of demand for the features of the patents-in-suit, it is not necessary for the Court to consider the other factors of the Panduit test, including manufacturing capacity.

## CONCLUSION

For the reasons stated, defendants' motion for partial summary judgment precluding Eaton's claim for lost profit damages is GRANTED.

Dated: March 8, 2007

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 8, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---